UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH SUE WISELEY,

                        Plaintiff,              Civil Action No. 14-11626
                                                      Honorable Judith E. Levy
                                                         Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                        Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT THE COMMISSIONER'S**
**MOTION FOR SUMMARY JUDGMENT [13]**

Plaintiff Deborah Sue Wiseley ("Wiseley") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). The Commissioner filed an unopposed motion for summary judgment [13], which has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.     RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Wiseley is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [13] be GRANTED, and that, pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be AFFIRMED.

## II.     REPORT

### A.     Litigation History

When Wiseley commenced this action, she was represented by attorney Richard Doud of the firm Davidson, Breen, Doud, Steele & Ferguson, P.C. (the "Firm").  The Court's initial scheduling order provided that Wiseley was to file her motion for summary judgment on August 18, 2014. [7].  When she failed to so, the Court issued an order directing her to show cause in writing, by September 10, 2014, "why this case should not be considered solely on the administrative record." [9].  The Court then issued a second show cause order when Wiseley failed to comply with the first one. [10].  This time, the Court ordered Wiseley to show cause in writing by October 17, 2014 why her complaint should not be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b).  In the alternative, the Court permitted Wiseley to file an untimely motion for summary judgment by the same date. [*Id.* at 2].  The Commissioner was given an extension of time to respond to Wiseley's motion (and to file its own summary judgment motion) by November 17, 2014.  [*Id.*].

On October 16, 2014, Wiseley filed a motion requesting leave to file an untimely brief. [11] along with a separate motion for summary judgment. [12].  The Commissioner filed a summary judgment/motion response to Wiseley's motion on November 10, 2014. [13].  On April 18, 2015, attorney James Smith ("Smith") of the Firm moved to substitute into the action for attorney Doud on behalf of Wiseley.  [14].

On May 20, 2015, this action was transferred to a three-judge panel (the "Panel") to address the Firm's representation of Social Security claimants in the Eastern District of Michigan.  [5/20/15 docket entry].  Pursuant to 15-AO-033, on June 9, 2015, the Panel administratively stayed this action.  [16].  On October 19, 2015, pursuant to 15-AO-045, the Panel determined that affected cases (including this one) would be transferred back to the

originally assigned judge, and that it would be each such judge's responsibility to determine when to lift the stay. [10/19/15 docket entry]. Accordingly, on November 6, 2015, United States District Judge Judith E. Levy issued an order lifting the stay in this matter and denying Smith's motion for substitution of counsel. [14].

The Court was later advised that the Firm had notified Wiseley that she would have until December 30, 2015, to retain a new attorney and have that attorney file an appearance in this action. [17]. Wiseley was also notified that if no such appearance was filed by December 30, 2015, the Court would consider Wiseley to be continuing her appeal without legal representation, *i.e.*, that she would be representing herself in this action *pro se*. [*Id.*]. Because no new attorney appeared on Wiseley's behalf, the Court deemed her to be representing herself *pro se*, ordered that her motion for summary judgment be stricken from the docket, and issued an amended scheduling order, giving Wisely until March 17, 2016, to file a new summary judgment motion. [19].[1]   To date, Wiseley has not filed a new motion for summary judgment and the Commissioner has informed the Court that she will rely on her original brief. [20].

###   B.   Procedural History

On October 4, 2011, Wiseley filed an application for DIB, alleging a disability onset date of March 11, 1998. (Tr. 41-47). This application was denied initially on December 1, 2011. (Tr. 48-52). Wiseley filed a timely request for an administrative hearing, which was held on November 7, 2012, before ALJ Earl A. Witten. (Tr. 24-40). Wiseley, who was represented by attorney Aaron Lemmens, testified at the hearing, as did vocational expert Joanne M. Pfeffer. (*Id.*). On December 10, 2012, the ALJ issued a written decision finding that Wiseley is not

---

[1] In light of the fact that Wisely was proceeding *pro se*, the Court noted that, "her filing need not be in the form of a formal legal brief – rather, Wiseley may simply advise the Court in writing as to why she believes the Commissioner's decision is in error." [*Id.*].

disabled.  (Tr. 11-18).  On February 26, 2014, the Appeals Council denied review.  (Tr. 1-3).

Wiseley timely filed for judicial review of the final decision on April 23, 2014.  (Doc. #1).

### C.      Framework for Disability Determinations

Under the Act, DIB is available only for those who have a "disability."  *See Colvin v.*

*Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any
> medically determinable physical or mental impairment which can be
> expected to result in death or which has lasted or can be expected to last
> for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  The Commissioner's regulations provide that a disability is to be

determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful
> activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments that "significantly limits . . . physical or
> mental ability to do basic work activities," benefits are denied without
> further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity,
> has a severe impairment that is expected to last for at least twelve months,
> and the severe impairment meets or equals one of the impairments listed in
> the regulations, the claimant is conclusively presumed to be disabled
> regardless of age, education, or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work,
> benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and work
> experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 U.S. Dist. LEXIS 150240, at *21 (E.D.

Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245

F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four

steps .... If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D.   Background

#### 1.   *Plaintiff's Reports and Testimony*

In an undated disability report, Wiseley indicated that she suffers from fibromyalgia, rheumatoid arthritis, spinal stenosis and emphysema. (Tr. 105). Wiseley reported that she stopped working on March 15, 1998, as a result of these conditions. (*Id.*). With respect to her education level, Wiseley completed the twelfth grade and pursued studies at a beauty school. (Tr. 106). Prior to stopping work, Wiseley was employed as a beautician for approximately 15 years. (*Id.*). During her employment, Wiseley reported that she would frequently lift less than ten pounds and that the heaviest weight she would lift was 20 pounds. (Tr. 107). She also noted that she takes the following medication: fiorsecet for memory loss; a ventolin inhaler for emphysema; and synthroid for a thyroid condition. (Tr. 108, 136). Wiseley indicated that Margaret Purdy, M.D., had treated her for all of her listed conditions. (*Id.*).

In a function report dated October 26, 2011, Wiseley stated that she lives in a private house with her husband. (Tr. 118). When asked to describe how her condition limits her ability to work, Wiseley stated: "chronic fatigue, muscle and joint pain, shortness of breath and back pain." (*Id.*). Her daily routine consists of watching television, using the computer, light housework and tending to her pets, a responsibility that she shares with her husband. (Tr. 119). Wiseley reported that she can no longer move around for an extended duration; cannot walk longer distances without pain or shortness of breath; she stays awake longer; and she must stand, sit and lay down during specified times throughout the day. (*Id.*). She also has trouble sleeping

on account of pain and general discomfort. (*Id.*). Wiseley indicated that she has difficulty dressing herself because of stiffness and pain when she bends down to put on socks or pants. (*Id.*). She further noted that pain and stiffness hinder her ability to get in and out of the bathtub. (*Id.*). Wiseley reported that she suffers from arm pain and numbness when she raises her arms to style her hair. (*Id.*). She stated that she generally prepares one daily meal for herself, but that her interest in cooking has diminished. (Tr. 120). Wiseley's typical household chores consist of "light cleaning, laundry, some yard work, ride lawnmower for short periods, light raking." (*Id.*). However, she reported that she shares the yard work with her husband and that she needs assistance if she falls too far behind. (*Id.*). She is able to drive or ride in a car and goes grocery shopping once a month for one to two hours. (Tr. 121). Wiseley is capable of paying bills, counting change, handling a checking and savings account, although she acknowledged "as time has passed I have made mistakes on checking account balance or forgotten bills." (Tr. 122). Her main hobbies are watching television (daily), using the computer (daily), and fishing (seasonal). (*Id.*). Wiseley reported that she is unable to garden because she can no longer "bend" or "stoop." (*Id.*).

When asked to identify the functions impacted by her condition, Wiseley checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, memory, concentration, completing tasks, understanding and following instructions. (Tr. 123). She noted that she suffers pain in all tasks and that her fibromyalgia affects her memory and concentration. (*Id.*). She reported that she can walk one-eighth of a mile before taking a break and that she needs to momentarily rest before resuming. (*Id.*). Wiseley indicated that she uses glasses on a daily basis and a cane "on occasional mornings when first rising." (Tr. 124). Regarding her medications, Wiseley reported that she suffers no side effects. (Tr. 125).

At the November 7, 2012 hearing before the ALJ, Wiseley testified that she suffered body pain and joint pain throughout the coverage period (from March 11, 1998 through December 31, 2003). (Tr. 29). She rated her pain during that time as a five on a scale from one to ten. (*Id.*). Wiseley stated that she would have pain flare-ups three to four times a week where she "couldn't do anything." (Tr. 29). During her flare-ups, Wiseley rated her pain as an eight or nine on a scale from one to ten. (Tr. 30). She also attested that her pain has "gotten worse" since 2003. (*Id.*). Wiseley indicated that she could walk one block; stand for approximately 30 minutes (any longer duration would cause her legs to swell); and sit/stand for the same amount of time (any longer duration would cause her to suffer lower back pain and numbness in her neck). (*Id.*). She indicated that her ability to sit and stand has gotten worse since 2003. (Tr. 31).

As for household chores, Wiseley noted that she could stand for only five to ten minutes while washing dishes before requiring a break. (*Id.*). She attested that she can no longer garden and perform yard work because she cannot stoop or bend; she cannot rake leaves on account of her neck and shoulder pain; and she does not crochet anymore because her arms hurt. (Tr. 32). Wiseley noted that she suffered numbness in her hands and had trouble sleeping more than two or three uninterrupted hours per night. (Tr. 33). To compensate for this sleep deficit, she frequently has to take a daily nap of between one and two hours. (Tr. 33-34). Wiseley also gauged that she could lift at most 15 pounds during the coverage period. (Tr. 34).

2.   *Medical Evidence*

The Court has thoroughly reviewed Wiseley's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

3.      *Vocational Expert's Testimony*

Joanne M. Pfeffer testified as an independent vocational expert ("VE") at the administrative hearing. (Tr. 36-39). The ALJ asked the VE to imagine a claimant of Wiseley's age, education, and work experience, who "had the maximum sustained exertional capacity to perform light work" along with the following limitations: no requirement for use of foot controls; no more than occasional bending, twisting, or turning; no climbing, crawling, kneeling or squatting; no use of aero-vibrating tools; no working around dangerous machinery or at elevated heights. (Tr. 37). The VE testified that the hypothetical individual would be capable of performing Wiseley's past relevant work as a beautician and could perform unskilled light work as a bench assembler (7,000 jobs), cashier (12,000 jobs) or counter clerk (6,000 jobs in southeastern Michigan). (*Id.*). The ALJ further inquired whether the imagined claimant would be able to perform the above-listed jobs with a stand/sit option. (Tr. 38). The VE attested that the number of jobs in each occupational category would be reduced by half. (*Id.*). The ALJ then asked the VE whether an imagined claimant who suffered from Wiseley's reported level of pain and discomfort could perform the above-listed jobs. The VE responded that such an individual would not be able to perform those jobs "based on her pain level" and "the fact that if the napping occurred during work hours that would be work preclusive." (Tr. 39). On cross-examination, Wiseley's attorney asked the VE, "[w]hat is the percentage off task a person can be on a continuing ongoing basis before it becomes work preclusive?" (*Id.*). The VE testified, "anywhere between five and 20 percent." (*Id.*). Counsel then inquired as to how many days a person could be absent from work on a continuing ongoing basis per month. (*Id.*). The VE attested that, "[i]t would be 90 days no absences unless a doctor's note is brought in. After that, one, no more than two a month on a continuing basis." (*Id.*).

**E.     The ALJ's Findings**

Following the five-step sequential analysis, the ALJ found that Wiseley is not disabled under the Act.  At Step One, the ALJ found that Wiseley had not engaged in substantial gainful activity from her alleged onset date through December 31, 2003, the date she was last insured. (Tr. 13).  At Step Two, the ALJ found that Wiseley has the severe impairments of inflammatory arthritis and fibromyalgia.  (Tr. 13).  At Step Three, the ALJ found that Wiseley's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 14).

The ALJ then assessed Wiseley's residual functional capacity ("RFC"), concluding that she is capable of performing light work, with the following limitations: lifting or carrying a maximum of 20 pounds occasionally and ten pounds frequently; walking or standing for six hours and sitting for six hours in an eight-hour workday; sit/stand option at will; she cannot use foot controls; only occasionally bend, twist and turn; no climbing, crawling, squatting or kneeling; she cannot use air or vibrating tools and cannot work around dangerous machinery or at elevated heights.  (*Id.*).

At Step Four, the ALJ determined that Wiseley is unable to perform any past relevant work.  (Tr. 16).  At Step Five, the ALJ concluded, based in part on the VE's testimony, that Wiseley is capable of performing a significant number of jobs that exist in the national economy. (*Id.*).  As a result, the ALJ concluded that Wiseley is not disabled under the Act.  (Tr. 17).

**F.     Standard of Review**

The district court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("an ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a

10

party.") (internal quotations omitted).  If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").

**G.    Analysis**

In the interest of ensuring that Wiseley's claim for benefits is fairly considered, even in the absence of a supporting brief, the Court has independently examined the record, and evaluated the merits of the Commissioner's arguments (which were responsive to Wisely's initial arguments), to determine whether the ALJ's decision is supported by substantial evidence.

*1.    Substantial Evidence Supports the*
*ALJ's Finding that Wiseley Is Not Disabled*

As set forth above, the ALJ found that Wiseley has the RFC to perform light work with the following limitations: lifting or carrying a maximum of 20 pounds occasionally and ten pounds frequently; walking or standing for six hours and sitting for six hours in an eight-hour workday; sit/stand option at will; she cannot use foot controls; only occasionally bend, twist and turn; no climbing, crawling, squatting or kneeling; she cannot use air or vibrating tools and cannot work around dangerous machinery or at elevated heights.  (Tr. 14).  Based in part on the VE's testimony, the ALJ concluded that Wiseley is not disabled under the Act because she is capable of performing a significant number of jobs that exist in the national economy.  (Tr. 16-17).

A.      Credibility

The ALJ reasonably discounted Wiseley's allegations of disabling limitations because they were inconsistent with the objective medical evidence and the record as a whole. (Tr. 14-16). As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain, or other symptoms, rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain, or other symptoms, is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of his symptoms are credible. *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929.

Here, the ALJ adequately discussed the objective medical evidence regarding Wiseley's physical impairments and reasonably explained why such evidence compelled a finding that her allegations of disability were not fully credible. (Tr. 15-16). The ALJ noted that Wiseley had not submitted any treatment records from her March 11, 1998 alleged onset date until February 2000, when she alleged that she had experienced tightness in her chest. (Tr. 213). An x-ray of

12

her chest at that time was unremarkable.  (*Id.*).  The next time Wiseley received treatment was at an emergency room visit in April 2002 after she complained of joint aches.  (Tr. 179).  Kevin Craig, M.D., reported that "[t]here is tenderness to palpitations of multiple large and small joints," but "no warmth, no swelling, no erythema."  (*Id.*).  He found that Wiseley had a rheumatoid factor of 22 and discharged her from the emergency unit "in excellent condition." (*Id.*).

On May 1, 2002, Wiseley visited her treating physician, Margaret Purdy, M.D., after she went to the emergency room eight days earlier complaining of severe joint pain.  (Tr. 143). Wiseley indicated that her neck pain was so severe that she could not turn her head without experiencing severe pain.  (*Id.*).  She also felt that her feet were swollen and she could not walk on them on account of the pain.  (*Id.*).  Wiseley informed Dr. Purdy that the emergency room physician prescribed Aleve, "which she did use with good relief of her symptoms."  (*Id.*).  Dr. Purdy noted that Wiseley exhibited 5/5 muscle strength and that deep tendon reflexes are 2/4 bilaterally in both upper and lower extremities.  (*Id.*).  The doctor referred Wiseley for an MRI of the brain that ultimately proved negative for demyelinating process.  (Tr. 149, 178). Approximately two weeks later, Wiseley presented with muscle soreness throughout her body. (Tr. 149).  On this occasion, Dr. Purdy noted very mild positive rheumatoid factor.  (*Id.*).

Sanjeev Prakash, M.D., evaluated Wiseley on May 30, 2002.  (Tr. 177-178).  His examination revealed no rheumatoid nodules and that Wiseley's gait and posture were normal. (Tr. 177).  She exhibited tenderness in many of the trigger points for fibromyalgia including: "base of the neck, over trapezius, right intrascapular area, both posterior superior iliac spine, and bilateral greater trochanters."  (Tr. 178).  Dr. Prakash also found that while Wiseley demonstrated tissue tenderness in the neck, lower thoracic and lumbar spine, and lower back, her

range of motion in those areas was normal and straight leg raising test was negative. (*Id.*). Her upper arms were mildly tender, although there was no muscle weakness, and "[n]one of the joints showed any swelling, deformity, or restriction of movements." (*Id.*). Dr. Prakash opined that Wiseley "has had fibromyalgia, which has recently been superimposed with some viral infection that increased the pains." (*Id.*). On her follow-up visit with Dr. Prakash in July 2002, Wiseley reported that her overall pain "is better" and she had only mild tenderness in both posterior superior iliac spine trigger points. (Tr. 176). Mild tenderness was present over trapezius and base of the neck trigger points. (*Id.*). Dr. Prakash determined that Wiseley's heightened sense of pain was caused by "a viral infection superimposed on underlying fibromyalgia" that appeared to have resolved. (*Id.*). He further opined that "she does not have any other rheumatological cause to account for mild anemia," but that she does have mild fibromyalgia. (*Id.*). Since "she is very active," the doctor "encouraged her to continue to stay active" and informed Wiseley that "she does not have any serious inflammatory rheumatological condition." (*Id.*). Her condition appeared to have improved in January 2003, after she visited Dr. Purdy for unrelated groin pain and stated that she was otherwise "feeling well." (Tr. 148).

After evaluating the above medical evidence, the ALJ found that Wiseley could perform a range of light work consistent with the limitations imposed in the RFC. (Tr. 15-16). In addition, the ALJ emphasized Wiseley's own hearing testimony that she took care of her grandchildren, assisted them with activities at school, attended their baseball games and had no difficulty driving during the coverage period. (Tr. 16, 34-35). And, importantly, the ALJ noted that not a single medical opinion from a treating or examining physician concluding that Wiseley had limitations greater than those specified in the RFC. (Tr. 16).

Moreover, the mere fact that certain aspects of the record (e.g., Wisely's own testimony

14

and subjective complaints to physicians) may be consistent with Wiseley's alleged impairment does not necessitate a finding that she was fully credible regarding *the extent* to which her symptoms can be attributed to the impairment.  Indeed, even where there is "objective medical evidence of an underlying medical condition … an ALJ is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability."  *Jones v. Comm'r. of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003).  This is precisely why the ALJ must consider and weigh "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians … and any other relevant evidence in the case record" to determine if the claimant's claims regarding the severity of her symptoms are credible.  *Soc. Sec. Rul.* 96-7, 1996 SSR LEXIS 4, at *3 (July 2, 1996); *see also* 20 C.F.R. §416.929.  In this case, the ALJ adhered to this standard and determined, based upon a review of *all* of the medical evidence, as well as Wiseley's testimony, that she was not credible to the extent her claimed level of physical impairments exceeded the RFC assessment.  (Tr. 15).  Thus, Wiseley has not shown that the ALJ's overall evaluation of the evidence was in any way erroneous.

In view of the foregoing, the Court concludes that Wiseley has not shown a "compelling reason" to disturb the ALJ's credibility determination, *Smith*, 307 F.3d at 379, particularly where the ALJ provided a reasonable explanation for discounting Wiseley's credibility, and that explanation is supported by substantial evidence.

### B.    VE Hypothetical

The Court also finds that the ALJ's hypothetical to the VE appropriately accounted for her physical limitations.  There is no evidence in the record that would support imposing more

15

restrictive limitations than those already specified in the ALJ's hypotheticals.  Accordingly, the ALJ was not required to include such limitations in his hypothetical question to the VE.  *See Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (an ALJ is only required to pose those hypothetical limitations that he finds credible); *see also Cookman v. Comm'r of Soc. Sec.*, No. 13-10687, 2013 U.S. Dist. LEXIS 176870, at *24-25 (E.D. Mich. Dec. 17, 2013) (same).

## C.    *Dictionary of Occupational Title Codes*

Finally, any argument that this matter should be remanded because the VE failed to specify the Dictionary of Occupational Title ("DOT") codes for each of the positions that Wiseley could perform in the national economy fails.  (Doc. #12 at 11-12).

As an initial matter, courts in this district have declined to remand in other cases where DOT codes were not provided.  *See, e.g., Owens v. Comm'r of Soc. Sec.*, No. 14-10830, 2014 U.S. Dist. LEXIS 182782, at *24-26 (E.D. Mich. Dec. 16, 2014); *Wilson v. Comm'r of Soc. Sec.*, No. 10-13828, 2011 U.S. Dist. LEXIS 71395, at *16 (E.D. Mich. Jul. 1, 2011) (holding that "[e]ven with the inconsistencies and the failure to provide the DOT codes, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT.").  Here, since the ALJ specifically asked the VE whether the jobs she cited were described in the DOT, and the VE responded in the affirmative (Tr. 38), that is all that is required.  *See Soc. Sec. Rul.* 00-4p, 2000 SSR LEXIS 8, at *8-9 (Dec. 4, 2000).  Moreover, the ALJ is under no independent obligation to verify the accuracy of the VE's testimony.  *See Baker v. Comm'r of Soc. Sec.*, No. 10-13748, 2012 U.S. Dist. LEXIS 84284 at *15 (E.D. Mich. Jun. 18, 2012).  As the Sixth Circuit stated in *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App'x 163 (6th Cir. 2009), "[t]his obligation falls to the plaintiff's counsel, who had

16

the opportunity to cross-examine the VE and bring out any conflicts with the DOT.  The fact that plaintiff's counsel did not do so is not grounds for relief." *Id.* at 168-69.  Similarly, Wiseley's attorney had the opportunity to ask the VE for the specific DOT codes, and either failed or chose not to do so (Tr. 39).  As a result, the Court finds no error warranting remand.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

## III.    CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's motion for summary judgment [13] be GRANTED and the Commissioner's decision be AFFIRMED.

Dated: April 22, 2016                               s/David R. Grand_____
Ann Arbor, Michigan                            DAVID R. GRAND
                                                           United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th

Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich.

LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with

a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be

concise, and should address specifically, and in the same order raised, each issue presented in the

objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record
and any unrepresented parties via the Court's ECF System to their respective email or First Class
U.S. mail addresses disclosed on the Notice of Electronic Filing on April 22, 2016.

s/Eddrey O. Butts                                  
EDDREY O. BUTTS
Case Manager

18